UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CHRISTOPHER M. SPENCE,

        Petitioner,

vs.                              Case No. 3:19-cv-1452-HES-MCR

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

        Respondents.

_____

## ORDER

## I.  STATUS

Petitioner is proceeding on an Amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Petition) (Doc. 8). He is challenging a state court (Putnam County) conviction for sale of cannabis. Respondents filed a Response to Order to Show Cause (Response) (Doc. 13). Petitioner filed a Reply Brief to the Response to Show Cause Order (Reply) (Doc. 15).[1]

_____

[1] Respondents filed an Appendix of Exhibits (Doc. 14). The Court hereinafter refers to the exhibits as "Ex." The page numbers referenced are the Bates stamp numbers at the bottom of each page of the exhibit. Otherwise, the page number on the document will be referenced. For the Petition, Response, and Reply, the Court references the page numbers assigned by the electronic filing system.

Petitioner raises six grounds claiming the ineffective assistance of trial counsel. He exhausted these claims in the state court system. Respondents calculate the Petition is timely filed pursuant to 28 U.S.C. § 2254(d). Response at 2.

## II.  EVIDENTIARY HEARING

"In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citations omitted), cert. denied, 137 S. Ct. 2245 (2017). To be entitled to an evidentiary hearing, a petitioner must allege "facts that, if true, would entitle him to relief." Martin v. United States, 949 F.3d 662, 670 (11th Cir.) (quoting Aron v. United States, 291 F.3d 708, 715 (11th Cir. 2002)) (citation omitted), cert. denied, 141 S. Ct. 357 (2020). See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011) (opining a petitioner bears the burden of establishing the need for an evidentiary hearing with more than speculative and inconcrete claims of need), cert. denied, 565 U.S. 1120 (2012); Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir. 1982) (same).

If the allegations are contradicted by the record, patently frivolous, or based upon unsupported generalizations, the court is not required to conduct an evidentiary hearing. Martin, 949 F.3d at 670 (quotation and citation

2

omitted).   Here, the pertinent facts are fully developed in this record or the record otherwise precludes habeas relief; therefore, this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).   Upon review, Petitioner has not met his burden as the record refutes the asserted factual allegations or otherwise precludes habeas relief; therefore, the Court finds Petitioner is not entitled to an evidentiary hearing.   Schriro v. Landrigan, 550 U.S. 465, 474 (2007).

### III.  HABEAS REVIEW

Federal courts are authorized to grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."   Lee v. GDCP Warden, 987 F.3d 1007, 1017 (11th Cir. 2021) (quoting 28 U.S.C. § 2254).   Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), there is a very deferential framework, limiting the power of federal courts to grant relief if a state court denied a claim on its merits.   Sealey v. Warden, Ga. Diagnostic Prison, 954 F.3d 1338, 1354 (11th Cir. 2020) (citation omitted) (acknowledging the deferential framework of AEDPA for evaluating issues previously decided in state court), cert. denied, 141 S. Ct. 2469 (2021); Shoop v. Hill, 139 S. Ct. 504, 506 (2019) (per curiam) (recognizing AEDPA imposes "important limitations

on the power of federal courts to overturn the judgments of state courts in criminal cases"). It is well understood that relief is limited to occasions where the state court's decision:

> "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A state court's decision is "contrary to" clearly established federal law if the state court either reaches a conclusion opposite to the Supreme Court of the United States on a question of law or reaches a different outcome than the Supreme Court in a case with "materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle" from Supreme Court precedents "but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413, 120 S. Ct. 1495.

Lee, 987 F.3d at 1017-18.

This is a high hurdle, not easily surmounted. If the state court applied clearly established federal law to reasonably determined facts when determining a claim on its merits, "a federal habeas court may not disturb the state court's decision unless its error lies 'beyond any possibility for fairminded disagreement.'" Shinn v. Kayer, 141 S. Ct. 517, 520 (2020) (per curiam)

(quoting <u>Harrington v. Richter</u>, 562 U.S. 86, 103 (2011)). Also, a state court's finding of fact, whether a state trial court or appellate court, is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). "The state court's factual determinations are presumed correct, absent clear and convincing evidence to the contrary." <u>Sealey</u>, 954 F.3d at 1354 (quoting 28 U.S.C. § 2254(e)(1)). This presumption of correctness, however, applies only to findings of fact, not mixed determinations of law and fact. <u>Brannan v. GDCP Warden</u>, 541 F. App'x 901, 903-904 (11th Cir. 2013) (per curiam) (recognizing the distinction between a pure question of fact from a mixed question of law and fact), <u>cert. denied</u>, 573 U.S. 906 (2014). Furthermore, the second prong of § 2254(d), requires this Court to "accord the state trial court [determination of the facts] substantial deference." <u>Dallas v. Warden</u>, 964 F.3d 1285, 1302 (11th Cir. 2020) (quoting <u>Brumfield v. Cain</u>, 576 U.S. 305, 314 (2015)), <u>petition for cert. filed</u>, (U.S. Feb. 27, 2021) (No. 20-7589). As such, a federal district court may not supersede a state court's determination simply because reasonable minds may disagree about the finding. <u>Id</u>. (quotation and citation omitted).

## IV.   INEFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance of counsel are "governed by the familiar two-part <u>Strickland</u>[v. Washington, 466 U.S. 668 (1984)] standard." <u>Knight v. Fla. Dep't of Corr.</u>, 958 F.3d 1035, 1038 (11th Cir. 2020), <u>cert. denied</u>, 141 S.

Ct. 2471 (2021).   To prevail, a petitioner must successfully show his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" as well as show "the deficient performance prejudiced the defendant, depriving him of a 'fair trial, a trial whose result is reliable.'"   Raheem v. GDCP Warden, 995 F.3d 895, 908 (11th Cir. 2021) (quoting Strickland, 466 U.S. at 687).   Failure to meet either prong is fatal to the claim.   Raheem, 995 F.3d at 908 (citation omitted). Additionally,

> because "[t]he standards created by Strickland and § 2254(d) are both 'highly deferential,' . . . when the two apply in tandem, review is 'doubly' so.   Harrington [v. Richter, 562 U.S. 86, 105 (2011)] (internal citations and quotation omitted).   Thus, under § 2254(d), "the question is not whether counsel's actions were reasonable.   The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."   Id.

Tuomi v. Sec'y, Fla. Dep't of Corr., 980 F.3d 787, 795 (11th Cir. 2020), cert. denied, 141 S. Ct. 1721 (2021).

## V.   GROUND ONE

In his first ground for relief, Petitioner raises a claim of ineffective assistance of counsel for failure to object to Detective Huddleston's testimony concerning identification and his narration of the ambiguous audio and videotape.   Petition at 4.   Petitioner exhausted this ground raising it in his

6

Rule 3.850 motion and then pursuing an appeal to the Fifth District Court of Appeal (5th DCA). Ex. F at 604-609. After conducting an evidentiary hearing, the circuit court denied relief. Id. at 788-94. In its written decision, the 5th DCA affirmed, opining:

> We affirm the final order denying Christopher Spence's postconviction motion filed pursuant to rule 3.850 of the Florida Rules of Criminal Procedure. We note that, although the postconviction court erred in relying on trial strategy to summarily deny grounds four and six, we find that the record conclusively refutes those grounds. See Foss v. State, 24 So. 3d 1275, 1276 (Fla. 5th DCA 2009) (applying the tipsy coachman doctrine to affirm the summary denial of postconviction claims where the record supported affirmance).

Ex. J. The mandate issued on November 12, 2019. Ex. M.

The Court finds the state court's determination is consistent with federal precedent. Thus, the 5th DCA's decision is entitled to AEDPA deference. Ground one is due to be denied as the state court's adjudication of the claim is not contrary to or an unreasonable application of Strickland and its progeny or based on an unreasonable determination of the facts. As such, the Court finds Petitioner is not entitled to habeas relief on ground one.

The circuit court recognized and applied the two-pronged Strickland standard of review. Ex. F at 789. The 5th DCA affirmed. The record shows Kevin R. Monahan represented Petitioner in the post-conviction proceeding.

Ex. F2.   Petitioner elected not to testify at the evidentiary hearing.   Id.   His trial counsel, L. J. Arnold, IV, testified.   Id.   In its decision, the circuit court made its findings, relying on the record and giving credence to defense counsel's testimony.

As noted by Respondents, the circuit court credited defense counsel's testimony that he made a strategic decision to attack the state's case by attempting to discredit the confidential informant rather than attacking the ambiguous and inconclusive audio and video evidence.   This Court has "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."   Consalvo v. Sec'y for Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011) (per curiam) (internal quotation marks omitted) (quoting Marshall v. Lonberger, 459 U.S. 422, 434 (1983)), cert. denied, 568 U.S. 849 (2012).   Thus, this Court should not and will not make a redetermination.

In choosing this strategy, Mr. Arnold did not so undermine the proper functioning of the adversarial process that Petitioner was deprived of a fair trial.[2]   Petitioner has failed to demonstrate either a Sixth or Fourteenth Amendment violation.

---

[2] The Fourteenth Amendment provides any state shall not deprive any person of life, liberty, or property, without due process of law.   U.S. Const. amend. 14.   To the extent a Fourteenth Amendment claim was raised and addressed, the adjudication of the state court resulted in

The circuit court noted that Detective Huddleston mentioned knowing Petitioner once during his testimony, merely stating, "I do." Ex. F at 790. As such, the court concluded there was no prejudice to Petitioner as there was no mention or suggestion as to how Detective Huddleston knew Petitioner and the Detective did not imply by this simple statement that he knew Petitioner based on some sort of past criminal activity. The circuit court also recognized that defense counsel did not object when the prosecutor elicited testimony that Petitioner was the target of a controlled operation. Instead, the court opined that counsel's strategy was to discredit the Confidential Informant (CI), Kelvin Ford, and in doing so, it was necessarily part of the defense's strategy to reveal that the CI was playing an essential part in a police-controlled operation. Id.

Admittedly, the audio and video evidence were inconclusive, but the jury's role was to determine whether the evidence and the testimony proved, beyond a reasonable doubt, the elements of the offense. The record demonstrates that defense counsel, after seeing and hearing the inconclusive evidence of a sale ("with no hand-to-hand transaction of marijuana for cash"),

---

a decision that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court. Therefore, Petitioner is not entitled to relief on this Fourteenth Amendment claim because the state court's decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts based on the evidence presented in the state court proceedings. Therefore, AEDPA deference is due, or alternatively, Petitioner is not entitled to federal habeas relief on a claim raised pursuant to the Fourteenth Amendment.

decided to "discredit the CI." Id. at 791.   As the credibility of the CI was of utmost importance to the state's case, defense counsel decided the best strategy was to attack Mr. Ford's credibility, which meant that the controlled operation allowing for Mr. Ford to work off his two cocaine convictions was part and parcel of what needed to be heard by the jury in order to assess Mr. Ford's credibility.   Indeed, Mr. Arnold presented to the jury that Mr. Ford was highly motivated to work for the police to maintain his freedom and defense counsel was able to amplify the questionable motives of the CI, pointing out that during the controlled operation, the CI failed to capture any exchange although he wore a recording device.   Id. at 791-92.   Therefore, the jury was left with the decision as to whether to believe the CI, who attested to his motive to keep himself out of jail.

The circuit court concluded: "the Court finds that under the circumstances, Trial Counsel's defense strategy was reasonably sound and Trial Counsel's acts or omissions have not been shown to be outside the broad range of reasonable competent performance under prevailing professional standards." Id. at 792-93.   Additionally, the court opined, "[n]either prong of Strickland has been conclusively met here." Id. at 793.

Not only has Petitioner failed to satisfy the performance prong, but he also failed to satisfy the prejudice prong.   This Court has opined:

10

> "To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir.2000) (quoting <u>Burger v. Kemp</u>, 483 U.S. 776, 794, 107 S. Ct. 3114, 97 L.Ed.2d 638 (1987)). In finding prejudice, the court must determine that the result of the proceedings would have been different considering "the totality of the evidence before the judge or jury." <u>Berghuis v. Thompkins</u>, —— U.S. ——, 130 S. Ct. 2250, 2265, 176 L.Ed.2d 1098 (2010) (quoting <u>Strickland</u>, 466 U.S. at 695).

<u>Kuhns v. Sec'y Dep't of Corr.</u>, No. 2:08-cv-163-FtM-29SPC, 2011 WL 1085013, at *6 (M.D. Fla. Mar. 21, 2011) (not reported in F.Supp.2d).

Counsel could have done things differently, but he chose a strategy, focused on that strategy at trial, and performed effectively in exhibiting that strategy. In denying post-conviction relief, the trial court properly applied the two-pronged <u>Strickland</u> standard of review. Thus, Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1) as the state court rejected this claim based on <u>Strickland</u>. Further, Petitioner has not shown the state court unreasonably applied <u>Strickland</u> or unreasonably determined the facts. Indeed, upon review, the state court was objectively reasonable in its <u>Strickland</u> inquiry. Furthermore, the 5th DCA affirmed the decision of the trial court in a written opinion.

As the threshold standard of <u>Strickland</u> has not been met, Petitioner has failed to demonstrate that his state court proceeding was fundamentally unfair and his counsel ineffective.   Thus, Petitioner has failed to demonstrate a Sixth or Fourteenth Amendment violation under the United States Constitution. Petitioner is not entitled to habeas relief on ground one of the Petition.

## VI.   GROUND TWO

In his second ground, Petitioner raises a claim of ineffective assistance of counsel, claiming his counsel performed deficiently for failure to object to the admission of undiscovered state-prepared transcripts into evidence without authentication, and then allowing the evidence to be published to the jury and sent to the jury room for deliberation.   Petition at 6.   Petitioner exhausted this ground by raising a comparable claim in his post-conviction motion and appealing its denial.   Ex. F at 609-15.   After conducting an evidentiary hearing, the circuit court denied relief.   <u>Id</u>. at 793.   The 5th DCA affirmed in an opinion rendered August 16, 2019.   Ex. J.

Petitioner cannot satisfy the "contrary to" test of AEDPA review as the court denied the claim applying the <u>Strickland</u> standard and the appellate court affirmed this decision.   Ex. F at 793.   Thus, the only questions that remain are whether the court unreasonably applied that principle to the facts of the case or premised its adjudication of the claim on an unreasonable

determination of the facts.   In this instance, this Court is not convinced of an unreasonable application or an unreasonable determination of the facts.

The record shows before introducing the audio portion of the controlled telephone call between Petitioner and the CI, the state provided a transcript "that's been provided to the defense."   Ex. A1 at 413-14.   Mr. Arnold announced no objection.   Id.   The jury heard the audio recording.   Id. at 420. Shortly thereafter, defense counsel asked to approach.   Id. at 422.   At sidebar, Mr. Arnold stated that the audio portion did not coincide with the transcript the prosecutor provided him.   Id.   The prosecutor agreed it was a different transcript and admitted he may have mixed up the transcripts.   Id. Mr. Arnold said he wanted to make sure they had the right transcript.   Id. The prosecutor apologized, stated Mr. Arnold was correct in making his objection, and the prosecutor provided the correct transcript to the court.   Id. at 423.   The court acknowledged the same.   Id.

Notably, the record shows defense counsel was provided with a transcript of the controlled telephone call, but during the course of the trial, the prosecutor erred and provided the wrong transcript.   Mr. Arnold brought the matter to the attention of the court and inquired as to whether the prosecutor provided the correct transcript.   As such, the error was corrected long before the matter went to the jury.   Here, counsel performed effectively,

13

making sure that the correct transcript was ultimately provided by the prosecutor.

In denying the claim of ineffective assistance of counsel, the court noted that Mr. Arnold stopped the improper transcript from going back to the jury and assured that the right transcript was provided to the court.   Ex. F at 793. Furthermore, the circuit court, in denying post-conviction relief, found that the jury heard the telephone call anyway, so the evidence was before the jury.   Id. The circuit court also found that neither the performance nor prejudice prongs of Strickland were met in this instance.   Ex. F at 793.   As such, the court denied the second ground, finding counsel's performance did not fall below an objective standard of reasonableness and determined there is no reasonable probability that, but for counsel's actions or omissions, the result of the proceeding would have been different.   Id.

Here, the state court properly applied the two-pronged Strickland standard of review.   Thus, Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1) as the state court rejected the claim based on Strickland. Furthermore, Petitioner has failed to show that the state court unreasonably applied Strickland or unreasonable determined the facts.   Indeed, the state court was objectively reasonable in its inquiry and the 5th DCA affirmed the decision.   The 5th DCA's adjudication of the claim is not contrary to or an

14

unreasonable application of <u>Strickland</u> and its progeny or based on an unreasonable determination of the facts.   Therefore, ground two is due to be denied.

## VII.   GROUND THREE

In his third ground, Petitioner raises another claim of ineffective assistance of counsel, asserting his counsel's failure to object to the improper and unrecorded administration of the oath to the prosecution witnesses amounted to a Sixth Amendment violation and a Fourteenth Amendment violation.   Petition at 7.   He exhausted this claim by raising it in his Rule 3.850 motion and on appeal to the 5th DCA.   Ex. F at 616-19.   The circuit court summarily denied relief on this ground.   <u>Id</u>. at 705.   The 5th DCA affirmed.   Ex. J.

This claim has absolutely no merit.   As noted by the circuit court, the claim "is clearly refuted by the record."   Ex. F at 705.   The record demonstrates the following.   At the inception of the trial, the court asked the prosecutor whether the state's witnesses were in the courthouse and the prosecutor confirmed they were present.   Ex. A1 at 381.   The court inquired as to whether the prosecutor wanted to bring the witnesses forth to be sworn in for the trial, and the prosecutor said yes.   <u>Id</u>.   The witnesses were brought

forward.[3] Id. at 381-82.   The court said, "[b]ring the witnesses on up front to get them all sworn in at one time." Id. at 382.   The prosecutor responded, "[y]es, Your Honor." Id.   The court asked if these were all of the witnesses the prosecutor was calling, and the prosecutor responded affirmatively. Id. at 382-83.   The clerk proceeded to swear in the witnesses. Id. at 383.   The witnesses collectively complied. Id.   Moreover, as each witness was called to testify, the court made an additional inquiry as to whether that particular witness had been previously sworn. Id. at 404, 439, 476.   Each witness confirmed that he had been already been sworn.[4] Id.

The record supports the state courts' conclusions, showing counsel's performance was well within the broad range of reasonable assistance under prevailing professional norms. Strickland.   Counsel's performance did not so undermine the proper functioning of the adversarial process that Petitioner was deprived of a fair proceeding.

---

[3] The record shows that the four potential witnesses for the state that were present in the courtroom were Sergeant Brad Forsythe, Wes Huddleston, Troy Wolfer, and Kelvin Ford. Ex. A1 at 385.   After being sworn in, they were instructed that the rule of sequestration had been invoked, told to state their names for the record, and directed to wait in the waiting room to be called. Id. at 382-85.

[4] Although Sergeant Forsythe was present, the record shows the state did not call Sergeant Forsythe as a witness.   Ex. A1.

Not only is the Court not convinced that, under these circumstances, counsel's performance fell outside the range of reasonably professional assistance, Petitioner has not shown resulting prejudice as there is no reasonable probability that if defense counsel had objected, his objection would have been sustained, as evinced by the decision of the circuit court finding it to be a meritless argument and the 5th DCA's affirmance of that decision.  A defense attorney need not make a meritless objection that would not have obtained relief.   Brewster v. Hetzel, 913 F.3d 1042, 1056 (11th Cir. 2019).

Here, the state court properly applied the two-pronged Strickland standard of review.   Thus, Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1) as the state court rejected the claim based on Strickland. Furthermore, Petitioner has failed to show that the state court unreasonably applied Strickland or unreasonable determined the facts.   Indeed, the state court was objectively reasonable in its inquiry and the 5th DCA affirmed the decision.   The 5th DCA's adjudication of the claim is not contrary to or an unreasonable application of Strickland and its progeny or based on an unreasonable determination of the facts.   Therefore, ground three is due to be denied.

## VIII.   GROUND FOUR

In his fourth ground, Petitioner claims he was deprived of the effective assistance of counsel because his counsel failed to subject the Florida Department of Law Enforcement (FDLE) lab analyst to voir dire, perfunctorily conducted the cross-examination of the analyst, failed to object to the identification and admission of the evidence, and conceded, during closing argument, identification of the evidence, an essential element of the offense. Petition at 9.

The 5th DCA, in affirming the denial of post-conviction relief, found the circuit court erred in relying on trial strategy to summarily deny ground four, but still found the record conclusively refutes the ground.   Ex. J.

The circuit court, in rejecting this ground, found the following:

> After a review, the Court agrees that the record clearly shows that the proper foundation was laid during direct examination by the State that the witness was qualified to give his expert opinion in the identification of the cannabis used in the transaction. The record shows that the witness engaged in numerous tests and was able to positively identify the substance in question as cannabis.
>
> A review shows that the original FDLE technician retired, the cannabis in the case was resubmitted and new tests were performed by the State's witness Troy Wolfer who testified about the results he received. *The Court agrees that Trial Counsel's decisions not to object to direct examination*

18

> *were reasonably sound strategy under the circumstances.* Neither prong of <u>Strickland</u> has been met. **Ground four is denied.**

Ex. F at 705-706 (italics added, citations omitted).

As noted above, the 5th DCA found the circuit court erred in relying on trial strategy but otherwise found no entitlement to relief, relying on the record. The record shows the prosecution called Troy Wolfer, an employee of the FDLE as a crime laboratory analyst in the chemistry section. Ex. A1 at 477. He attested he had been an employee for two and a half years. <u>Id</u>. He explained that as an analyst, he would analyze the evidence to determine the presence or absence of a controlled substance. <u>Id</u>. at 478. He explained his training. <u>Id</u>. at 478-79. He described his education, attesting that he obtained a bachelor's degree of science in chemistry from the University of Florida. <u>Id</u>. at 479. He confirmed that he had had an occasion to chemically analyze a substance to determine if it were cannabis. <u>Id</u>. He testified he has analyzed cannabis approximately 100 times as it is a routine part of his duties. <u>Id</u>. at 480. He revealed it was his first time testifying as to his analysis in court. <u>Id</u>.

The prosecutor moved to have Troy Wolfer give his opinion "in the field of cannabis analysis." <u>Id</u>. The court asked if the defense wanted any voir dire as to Mr. Wolfer's qualifications, and Mr. Arnold declined. <u>Id</u>.

19

The prosecutor asked Mr. Wolfer about the evidence in FDLE case number 20130405100. Id. at 481. Mr. Wolfer confirmed the evidence had his marking and seals, evincing that he worked on the case. Id. He attested that he performed a microscopic examination as well as a Duquenois-Levine color test. Id. at 482. He explained, in doing the microscopic analysis, he was looking for the chemical characteristics of cannabis, including hairs, stems, flowers, and other seeds. Id. He also explained the color test, and that it was indicative of cannabis. Id. He attested that this was a commonly used field test. Id. at 482-83. He testified that after his analysis, his opinion was that the substance was cannabis. Id. at 483. He confirmed that was still his opinion. Id.

Defense counsel cross-examined Mr. Wolfer and asked if the substance was marijuana. Id. Mr. Wolfer said yes, the substance entered into evidence was marijuana. Id.

The record does show the witness was qualified to give his expert opinion as an analyst specializing in chemistry and chemical analysis of substances, including cannabis. The record also shows that this analyst tested the cannabis and provided testimony concerning the results of the tests. He described the tests performed on the substance and confirmed the substance was marijuana.

Under these circumstances, even if defense counsel had performed as Petitioner suggests he should have performed, it would have made no difference in the outcome of the case. Once obtained, the evidence was sent off to the FDLE lab. Appropriate tests were conducted. Based on the record, the analyst who testified at trial was qualified. He attested to the nature of the substance and opined it was marijuana. Even if defense counsel had questioned Mr. Wolfer on voir dire, rigorously cross-examined him, or objected to the expert's identification and the court's admission of the evidence, it would not have changed the outcome of the case. Petitioner has not shown that there were any factors that could have been brought out on voir dire of the expert, through more extensive cross-examination of the expert, or based on any objections that counsel could have made that ultimately would have prevented or changed the expert's testimony or would have resulted in the exclusion of the evidence at trial.

Petitioner was not charged with possession of marijuana. He was charged with sale of cannabis.[5] Ex. A at 34. The focus of the defense's case was to attack the state's contention that Petitioner sold or delivered the

---

[5] No instruction was requested or given for possession. Ex. A1 at 510-19. At the outset of the trial, the court gave a preliminary instruction: "[w]hat the attorneys say is not evidence, and you are not to consider it as such." Id. at 391. In its charge the court reminded the jury, "what the attorneys say is not evidence or your instruction on the law." Id. at 509.

cannabis.[6]  It was not a mystery that the submitted substance was cannabis. Prior to trial, Petitioner's defense counsel at the time, Scott Bishop, attended the deposition of Wes Huddleston.  Detective Huddleston attested he had a wealth of experience with cases involving marijuana.  Ex. A at 177.  He described the marijuana seized as having "a skunk-like smell."  Id.  Once taken, the substance was submitted as police evidence and sent to the lab.  Id. At trial, Detective Huddleston testified that the CI handed him a quarter pound of marijuana after the CI's interaction with Petitioner.  Ex. A1 at 417.

Of further import, cannabis is a controlled substance, but it is not a synthetic drug.  As such, the analysis of the substance did not present the troubling issue of whether substitute cathinones or salts were introduced, which may prove difficult to analyze and accurately identify through a field test.  State v. Tigner, 276 So. 3d 813, 815 (Fla. 4th DCA 2019) (contents tested positive at scene for MDMA but later tested as "substitute cathinones"). Indeed, cannabis is a plant, with the characteristics of a specific plant,

---

6 As Mr. Arnold testified at the evidentiary hearing, the defense believed its best defense was to discredit the CI, "[b]ecause you have a really, really bad guy, cocaine/crack dealer who's walking the streets because he's flipped on my client who's selling marijuana, you know, recognized medicine in most states in the country, so I thought that there was certainly – there was a big chance that he [the CI] could – he could be making all this up."  Ex. F2 at 1106.  Mr. Ford was attempting to work off two first degree felonies of sale of cocaine within 1,000 feet of a church or school.  Id. at 1107.

including hairs, stems, flowers, and seeds.   Ex. A1 at 482.   Therefore, a microscopic analysis reveals "the chemical characteristics of cannabis."   Id.

Under these circumstances, the Court is not convinced that counsel's performance fell outside the range of reasonably professional assistance. More importantly, Petitioner has not shown resulting prejudice as there is no reasonable probability that if defense counsel had taken the actions suggested by Petitioner, objections would have been sustained, or it would have made a difference in the case to undertake voir dire of the lab analyst and extensively cross-examine the analyst, as evinced by the decision of the 5th DCA affirming the denial of post-conviction relief.

Of import, counsel's decision to admit, in closing, that the substance was cannabis did not concede Petitioner's guilt to the offense of sale of cannabis, the offense with which Petitioner was charged:

> Thus, trial counsel did not enter a guilty plea on Petitioner's behalf without his consent. Florida v. Nixon, 543 U.S. 175, 187 (2004) (holding that a concession of guilt to a lesser included offense is not the functional equivalent of a guilty plea); see also McNeal v.. Wainwright, 722 F.2d 674, 677 (11th Cir.1984) (distinguishing that a tactical decision to admit to a lesser offense does not amount to guilty plea without a defendant's consent and the tactical decision does not require a client's consent).

Thomas v. Sec'y, DOC, Fla. Att'y Gen., No. 2:09-CV-809-FTM-99, 2013 WL 839573, at *7 (M.D. Fla. Mar. 6, 2013) (not reported in F.Supp.2d).   Indeed, referring to the substance as marijuana was not an admission to sale or delivery.

Therefore, Petitioner has not shown his attorney's decision to state, in closing, that the substance was marijuana was objectively unreasonable. Furthermore, Petitioner has not shown there is a reasonable possibility that the outcome of the trial could have been different had counsel not conceded so. Indeed, based on the evidence, it would have been a useless charade to contend the substance was not marijuana.

The 5th DCA's decision is entitled to AEDPA deference.   The Court finds the state court's determination is consistent with federal precedent.   The state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.   In brief, the state court's adjudication of the claim is not contrary to or an unreasonable application of Supreme Court law or based on an unreasonable determination of the facts.   Therefore, ground four is due to be denied.

## IX.   GROUND FIVE

In ground five, Petitioner claims his counsel ineffectively failed to object to the jury instructions and verdict form and to request lesser-included

offenses.   Petition at 11.   Petitioner exhausted this claim by presenting it in his Rule 3.850 motion and appealing the denial of the motion.   Ex. F at 626-36.   The circuit court found: "[t]he required category one lesser included of Possession of Cannabis was included in the jury instruction."   Thus, the court concluded that an objection would have been meritless.   The 5th DCA affirmed.   Ex. J.

The record belies the circuit court's finding.   Neither the instructions nor the verdict form instructed or provided for consideration of a verdict for possession of cannabis.   Ex. A1 at 268, 270-83, 509-19.   The court instructed the jury on sale of cannabis.   Id. at 273, 510.   The verdict form allowed for a finding of guilty of the charge of sale of cannabis or a finding of not guilty.   Id. at 268.   No other options were given.

In light of the above, the Court will not give deference to the state's court's decision as it is founded upon a completely unsupported finding of fact.[7] The question remains as to whether Petitioner is entitled to habeas relief.

---

[7] Unfortunately, Respondents did not recognize or address the state court's error in finding that possession of cannabis was included in the jury instructions.   Response at 14-15.   As such, they have not addressed the ramifications of the omission of this instruction and any related failure of counsel to act within the bounds of reasonable assistance under prevailing professional norms due to this circumstance.

The record demonstrates the following.   The trial court conducted a charge conference.   Ex. A1 at 496-504.   When the court asked if there were lesser included offenses, the state responded there were none.   Ex. A1 at 496. The court said it had not seen any "Category I lesser includeds [sic]" on the standard jury instructions. [8]   Id.   The court asked Mr. Arnold if that assessment was correct, and he responded yes.   Id.   The court said it would take out page five concerning "lesser includeds," and the state said yes.   Id. at 498.   The parties agreed that everything looked appropriate.   Id. at 504.

There is no question, no lesser included offense was given in the instructions or mentioned in the verdict form.   It appears that under Florida law, this was not error.   Petitioner was charged only with sale of cannabis: "Section 893.13(1)(a) provides that it is unlawful to sell, manufacture, or deliver, or possess with intent to sell, manufacture, or deliver a controlled substance. Section 893.13(1)(a)2 makes those offenses a felony of the third degree when the controlled substance is cannabis."   Green v. State, 459 So. 2d 351, 352 (Fla. 2d DCA 1984).   See Ex. A at 34, Information.   The jury found Petitioner guilty as charged with the sale of cannabis.   Ex. A1 at 556-57.

---

[8] It would have been frivolous for counsel to make an objection to a standard jury instruction. Onstott v. Sec'y, Dep't of Corr., No. 8:12-cv-2695-T-17EAJ, 2015 WL 1125206, at *17 (M.D. Fla. Mar. 12, 2015) (not reported in F.Supp.3d) (quotation and citation omitted).   Therefore, counsel cannot be deemed ineffective for raising a non-meritorious issue.

However, "[w]hen the primary offense is the sale, manufacture, delivery or possession with intent to sell, manufacture or deliver a controlled substance in violation of section 893.13(1)(a), the only "Category 1" lesser offense is that provided in section 893.13(1)(e), **if possession is charged.** <u>Green</u>, 459 So. 2d at 352 (emphasis added). Petitioner was not charged with possession. Ex. A at 34. Moreover, "[b]ecause the sale of a controlled substance can occur without its possession by the defendant, possession is neither an essential element of a sale nor a lesser-included offense of it[.]" 16B Fla. Jur 2d Criminal Law—Substantive Principles/Offenses § 1404. Indeed, there are two elements that the state must prove beyond a reasonable doubt for the state to prove the crime of the sale of cannabis: (1) the defendant sold or delivered a certain substance, and (2) the substance was cannabis. Ex. A1 at 510.

Thus, it appears that the trial court and the parties properly considered and assessed whether lesser included offenses should be given in this particular case and decided there were no Category I lesser included offenses. As such, counsel cannot be deemed to have performed deficiently in this regard. Without satisfying the performance prong of <u>Strickland</u>, Petitioner cannot succeed on his claim of ineffective assistance of counsel.

Alternatively, apparently Petitioner is contending that the jury should have been given the opportunity to employ its inherent power to pardon

27

Petitioner by convicting him of a lesser offense of possession of cannabis, even though the jury found Petitioner guilty of sale of cannabis.[9]   Although Florida may recognize the possibility of jury pardons and consider it reversible error on direct appeal for failure to instruct on the next immediate lesser included offense, Sanders v. State, 946 So. 2d 953, 957 (Fla. 2006), that does not mean that a petitioner can satisfy the prejudice prong of Strickland by claiming the possibility of a jury pardon based on arbitrariness, whimsy, caprice, nullification, and leniency.   This Court presumes a jury acts according to law. Strickland, 466 U.S. at 694.   In this instance, the court instructed the jury to determine whether the state had proven sale of cannabis beyond a reasonable doubt.   The jury found that the state had proved its sale of cannabis case against Petitioner.   Therefore, Petitioner "has no entitlement to the luck of a lawless decisionmaker[.]" Id. at 695.

Therefore, even assuming deficiency on the part of counsel, Petitioner has suffered no prejudice by this alleged deficiency.   There is no reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different.   For it to be different, the Court would have to assume that the jury would "violate its oath, disregard the law,

---

[9]  Possession of cannabis may be a third-degree felony, depending on the amount.   Fla. Stat. § 893.13.

and ignore the trial court's instructions." <u>Sanders</u>, 946 So. 2d at 959.   As

such, Petitioner cannot satisfy the prejudice prong of <u>Strickland</u>.   Therefore,

he is not entitled to habeas relief on ground five.

## X.   GROUND SIX

In ground six, Petitioner claims his counsel was ineffective for failure to

object to the trial court's limitation of the cross-examination of the CI and for

failure to object to the trial court allowing the state to expand upon redirect.

Petition at 13.   Petitioner exhausted this claim by presenting it in his Rule

3.850 motion and appealing the denial of the motion.   Ex. F at 636-43.   The

circuit court denied this ground.   <u>Id</u>. at 706-708.   The 5th DCA affirmed.   Ex.

J.   In affirming the denial of post-conviction relief, the 5th DCA found the

circuit court erred in relying on trial strategy to summarily deny ground six,

but still found the record conclusively refutes the ground.   <u>Id</u>.

The circuit court, in pertinent part, said:

> It appears that the Defendant asserts during
> cross examination of the State's witness, he was not
> properly allowed to present his defense theory.
> Specifically, that the State's witness had purchased
> the cannabis from another individual and was framing
> the Defendant.   The Defendant draws this from an
> objection by the State over Trial Counsel's questioning
> the State witness with the following: "You're a CI and
> you have some criminal charges and maybe you have
> had some experience with other people who are in that
> – those types of business.   If aside from Mr. Spence,

that you are alleging you purchased marijuana from him . . . is there anybody else you could purchase marijuana from?" The State objected and asked to approach sidebar. The State expressed concerns over Trail [sic] Counsel's going into details of the State witnesses [sic] felony convictions which had already been disclosed. The Court never specifically instructed Trial Counsel to not pursue that defense strategy hut [sic] suggested to recall the State's law enforcement witness and show that the CI had been out of the Officer's view several times. After that exchange, Trial Counsel proceeded to question the CI on the special treatment he received for cooperating with law enforcement. *This appears to be the trial strategy taken by Trial Counsel in the light of the evidence being presented by the State.*

The State's case included a video of the confidential informant being searched, subsequently recorded by law enforcement from a starting point to the meeting with the Defendant and subsequently back to law enforcement where he was searched again and was given the exact amount of money to purchase the drugs and returned with the drugs. The Defendant was additionally physically observed at the transaction location by the arresting officer. The Defendant was not limited in pursuing his theory of defense that the confidential informant had obtained the purchased drugs from another source. It appears that the Court was merely instructing Trial Counsel to lay the proper predicate for that specific defense theory now raised in the Motion. The record does reflect that trial Counsel did attack the video and raise the possibility of the confidential informant not going directly to and from the arranged meeting place. Trial Counsel raised issues by questioning the route and if the confidential informant had made any stops while to and from the arranged meeting place.

Ex. F at 706-707 (italics added, citations omitted).

As noted above, the 5th DCA found the circuit court erred in relying on trial strategy but otherwise found no entitlement to relief, relying on the record. The record shows, on direct, Mr. Ford attested that he had been convicted of one felony and one misdemeanor of dishonesty. Ex. A1 at 441-42. He also attested that he had been placed in a pretrial diversion program after he received charges for sale of cocaine. Id. at 442. On cross-examination, Mr. Arnold inquired about the two charges for sale of cocaine. Id. at 463. Mr. Ford said he was attempting to work off the charges. Id. at 463-64. Mr. Arnold also asked if Mr. Ford was trying to cover up the camera. Id. at 467. Mr. Ford responded that when he put his seat belt on it crossed over the camera and covered up the button. Id. at 467-68. Mr. Arnold also made an extensive inquiry into Mr. Ford's path to the cemetery. Id. at 468-70.

When counsel attempted to ask about purchases of marijuana from the community, the prosecutor asked for a sidebar. Id. at 470. The prosecutor simply stated that it had already been established that Mr. Ford was a convicted felon and the state just wanted to make sure that these questions would not lead to the specific nature of the felony. Id. Mr. Arnold argued that other purchases were relevant to show that the CI could have purchased marijuana from someone else en route and then stashed it somewhere. Id. at

471.  Mr. Arnold argued that the camera did not show the path of the CI and the CI was not wearing a seat belt because the car warning alarm beeped the whole time.  Id.  The court stated it doubted the relevance but said counsel could recall the officers and attempt to show that the CI was out of their sight for a period of time.  Id. at 472.  Upon further questioning, Mr. Ford stated he had reason to work for the police as he had entered the pretrial diversion program and wanted to work off the offenses.  Id. at 473.

The record shows that prior to Mr. Ford's testimony, Detective Huddleston testified that the officers did not have Mr. Ford in their sight at all times.  Id. at 415-16.  In fact, during the transaction, the officers were one block over.  Id. at 416.  Detective Huddleston testified that after the transaction, the officers met Mr. Ford back at the cemetery.  Id. at 417. Thus, the record contains evidence that Mr. Ford was, at various points, outside of the view of the officers.

The record also shows, in closing argument, Mr. Arnold attempted to persuade the jury there were opportunities for Mr. Ford to obtain and conceal marijuana, as exhibited by the poor video quality and the seat belt alarm going off in the car.  Id. at 542.  Mr. Arnold emphasized that the camera was concealed  or  covered,  resulting  in  the  second  half  of  the  video  being

unrevealing.   Id.   Finally, he argued the CI was self-interested and not credible.   Id. at 540-42.

Based on the record, the 5th DCA's decision is entitled to AEDPA deference.   The Court finds the state court's determination is consistent with federal precedent.   The state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.   In brief, the state court's adjudication of the claim is not contrary to or an unreasonable application of Supreme Court law or based on an unreasonable determination of the facts.   Therefore, ground six is due to be denied.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.   The Amended Petition for Writ of Habeas Corpus (Doc. 8) is **DENIED**.

2.   This action is **DISMISSED WITH PREJUDICE**.

3.   The **Clerk** shall enter judgment accordingly and close this case.

4.   If Petitioner appeals the denial of his Amended Petition (Doc. 8), **the Court denies a certificate of appealability.**[10]   Because this Court has

---

[10] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or

determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this ___19th___ day of August, 2021.

_____
UNITED STATES DISTRICT JUDGE

sa 8/18
c:
Christopher M. Spence
Counsel of Record

that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration, this Court will deny a certificate of appealability.